IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JARED A. REEVES,            )
                            )
        Plaintiff,           )
                            )
v.                          )   Case No. CIV-10-005-RAW
                            )
MICHAEL J. ASTRUE,          )
Commissioner of Social      )
Security Administration,    )
                            )
        Defendant.           )

## REPORT AND RECOMMENDATION

Plaintiff Jared A. Reeves (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on July 6, 1968 and was 40 years old at the time of the ALJ's decision. Claimant completed his education through the twelfth grade with special education classes. He also took courses on automobile mechanics at Indian Capital Vo-Tech.

3

Claimant worked in the past as an automobile mechanic. Claimant alleges an inability to work beginning March 31, 2005, due to degenerative disk disease, right foot drop, and borderline intellectual functioning.

### Procedural History

On September 18, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On July 21, 2008, an administrative hearing was held before ALJ Deborah L. Rose in Tulsa, Oklahoma. On August 28, 2008, the ALJ issued an unfavorable decision on Claimant's applications. On October 30, 2009, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of

sedentary work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) finding Claimant failed to meet a listing without discussing the elements of the listing; (2) making findings as to Claimant's RFC which were not supported by substantial evidence; and (3) failing to engage in a proper credibility analysis.

## Evaluation of a Listing

Claimant asserts the ALJ erroneously failed to discuss the requirements for Listing 1.04C related to spinal disorders. On January 19, 2005, Claimant complained of low back pain. A CT scan revealed moderate annular disk bulging at L3-4, moderate to severe disk bulging at L4-5, and disk bulging and an osteophyte impinging on the neural foramen at L5-S1. (Tr. 188). An MRI indicated a herniated disk at L4-5 and an annular bulge at L5-S1. (Tr. 202).

On July 27, 2005, Claimant was attended by Dr. James B. Blankenship at the Neurosurgery Spine Center. He determined Claimant experienced degenerative changes at L4-5 and L5-S1 with mild retrolisthesis and endplate changes indicative of an acute to subacute process. He found disk herniation at L4-5 on the right that extends out in to the right neural exit foramen in the extreme lateral disk space. At L5-S1, Dr. Blankenship determined Claimant

5

had a midline disk protrusion slightly eccentric off to the left hand side with bilateral neuroforaminal narrowing secondary to settling, but no lateral disk protrusions were appreciated. (Tr. 204-05).

After physical therapy resulted in no significant changes to Claimant's condition, Dr. Blankenship ordered a discography. This testing showed an annular tear at L4-5 with severe degeneration at L5-S1. (Tr. 227-228). As a result, on September 8, 2005, Dr. Blankenship recommended an anterior lumbar interbody arthrodesis and fusion at L4-5 and L5-S1. (Tr. 220). In a follow up visit on November 17, 2005, Dr. Blankenship again recommended the fusion surgery but Claimant stated he could not afford it. Dr. Blankenship told Claimant a significant contributing factor to his pain was his obesity. (Tr. 224-25).

On October 28, 2006, Claimant underwent a consultative physical examination by Dr. Johnson Gourd. Dr. Gourd assessed Claimant with a history of chronic back pain since September of 2004 with testing indicating significant herniation of the disks. Dr. Gourd noted, however, that he did not have the medical records for his review. He also states that "it is not clear whether or not surgery was indicated or advised by the evaluating surgeons." Dr. Gourd also found Claimant to have right lower leg paralysis

6

with atrophy. He noted Claimant wore a brace to walk since age 8 or 9. (Tr. 231-33). Dr. Gourd found Claimant's range of motion was limited in his back. (Tr. 234).

On October 30, 2006, Claimant underwent a consultative mental evaluation by Denise LaGrand, Ph.D., a licensed clinical psychologist. Dr. LaGrand's testing revealed a verbal IQ of 75, a performance IQ of 83, and a full scale IQ of 77. (Tr. 241). She found Claimant to have cognitive functioning in the borderline intellectual functioning range. (Tr. 242). Dr. LaGrand estimated that Claimant's ability to perform adequately in most job situations, handle the stress of a work setting, and deal with supervisors or co-workers to be low or below average. Id.

On May 31, 2007, Claimant was treated at the Community Physicians Group. Claimant complained of worsening back pain which was aggravated by bending, climbing stairs, sitting, standing, and walking. He experienced relief by lying down. Claimant also reported tingling in his legs. (Tr. 290). An MRI indicated Claimant had bilateral foraminal stenosis at L4-5 and herniated nucleus pulposis with impingement on the left foramen at L5-S1. (Tr. 293).

On June 6, 2008, Claimant fell out of his bathtub and hit his left knee on the toilet. He was also suffering from back pain with

radiculopathy. (Tr. 296). He was prescribed a shower chair, shower sprayer, and four point cane and encouraged to undergo surgery. (Tr. 296-97).

On July 8, 2008, Claimant again went to the Community Physicians Group complaining of worsening persistent back pain. Claimant stated he had decreased mobility, numbness, spasms, and tingling in the legs. (Tr. 301). Re-evaluation by a neurosurgeon was recommended. (Tr. 302).

In her decision, the ALJ found suffered from the severe impairments of degenerative disk disease, right foot drop, and borderline intellectual functioning. (Tr. 10). She also determined Claimant did not meet a listing, specifically discussing Listing 1.04 for disorders of the spine. With regard to this listing, the ALJ found Claimant does not have the nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate effectively as required by the listing. The ALJ also discussed Listing 1.02 for foot drop, finding Claimant's impairment does not result in the listing's requirement of an inability to ambulate effectively. (Tr. 10-11).

With regard to Claimant's mental impairment, the ALJ proceeded with a lengthy discussion of the applicability of Listing 12.05. The ALJ concluded Claimant did not meet the required limitations of

Listing 12.05 in paragraphs A, B, C, or D. (Tr. 11-13).

Ultimately, the ALJ found Claimant retained the residual functional capacity to lift/carry 10 pounds and stand/walk for 2 hours in an 8 hour workday. She found he could also stoop and crouch occasionally and is limited in the operation of foot controls with his lower extremities. Mentally, the ALJ determined Claimant was limited to simple tasks that can be learned in less than 30 days. (Tr. 13-15). As a result, the ALJ determined Claimant could perform a significant number of jobs in the national economy which involve a full range of sedentary work. (Tr. 15-16).

Listing 1.04C requires certain factual findings be present, in stating:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2

hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. I § 1.04C.

While Claimant discusses all of the various elements required by Listing 1.04C, the ALJ only identified one deficiency – that Claimant did not have nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate effectively. (Tr. 10-11). It appears from the medical record that stenosis was indeed diagnosed resulting in leg pain and numbness. (Tr. 293). While not as clear, it also appears from the record that Claimant's nerve root was compromised to some degree, although whether this resulting in compression as stated in the Listing is subject to interpretation. (Tr. 204, 293). The medical record also indicates Claimant has an inability to ambulate effectively as that term is defined by the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. I § 1.00B2b. The ALJ did not explain the discrepancy in her finding and the medical record. On remand, the ALJ shall examine the record and whether Claimant meets Listing 1.04C.

### RFC Evaluation

Claimant next contends the ALJ failed to consider his obesity

in evaluating his RFC. The ALJ recognized Claimant's weight was 342 pounds in 2006 and 372 pounds in June of 2008. (Tr. 14). He is 6' 4" in height. (Tr. 209). In reference to this condition, the ALJ cites to Dr. Blankenship's recommendation that Claimant lose weight because it contributes to his back problems. The ALJ, however, discounts Claimant's claim of impairment on the basis of his failure to lose weight despite recognizing he could not do so effectively due to pain. She suggests Claimant should have dieted and done some daily walking with his cane. (Tr. 14). This discussion does not satisfy the consideration of Claimant's obesity as a contributing condition.

An ALJ is required to consider "any additional and cumulative effects" obesity may have upon other conditions from which a claimant suffers, recognizing that obesity combined with other impairments may increase the severity of the condition. Soc. Sec. R. 02-1p; 20 C.F.R. Pt. 405, Subpt. P, App. 1 § 1.00(Q)(combined effect with musculoskeletal impairments). "[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." Id.; see also, Hargis v. Sullivan, 945 F.2d 1482, 1491 (10th Cir. 1991)(an ALJ "must consider the combined effects of impairments that may not be severe individually, but which in combination may constitute a severe

11

medical disability.")

"Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Each case is evaluated on information in the medical record. Id.

Additionally, the severity of Claimant's obesity has some bearing upon the effect on other impairments. Claimant's BMI of 42.2 is indicative of a level III in severity where "[g]enerally, physicians recommend surgery" when obesity reaches this level. Id.

On remand, the ALJ shall consider Claimant's obesity in combination with his back impairments and foot impairment. Thereafter, the ALJ shall re-evaluate her RFC determination.

### Credibility Determination

The ALJ determined Claimant's claims of intensity, persistence, and the limiting effects of his symptoms were not credible because they were inconsistent with his RFC. The primary basis for this finding was that Claimant did not have surgery as recommended and he remained obese. Claimant stated he could not afford the surgery and nothing in the record contradicts this contention. Claimant's physicians also recognized Claimant was unable to lose weight as recommended because of the pain he was experiencing. Again, nothing in the record contradicts this assertion.

It is well-established that "findings as to credibility should

be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor

recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ's bases for rejecting Claimant's credibility were specifically contradicted by the evidentiary record. On remand, the ALJ shall re-evaluate her credibility determination in light of the factors required by the controlling regulations and case authority.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 4th day of January, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE